UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. VICKERS,                          Case No: 18-12803

            Plaintiff,              Stephanie Dawkins Davis
v.                                           United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.
_____/

**OPINION AND ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 13, 14)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On September 10, 2018, *pro se* plaintiff Michael Vickers filed this lawsuit

challenging the Social Security Administration's denial of his application for

benefits.  (ECF No. 1).  Currently before the court are the parties' cross-motions

for summary judgment and Vickers' reply.  (ECF Nos. 13, 14, 15).

### B.    Administrative Proceedings

On February 8, 2016, Vickers filed a Title II application for a period of

disability and disability insurance benefits and a Title XVI application for

supplemental security income, alleging disability beginning on June 30, 2005.  (Tr.

10).[1]  The Commissioner initially denied his claims on February 24, 2016.  (*Id.*)

Vickers requested a hearing and appeared in person along with his attorney at the

time on October 17, 2017 before Administrative Law Judge Nicole Quandt ("the

ALJ") in Flint, Michigan.  (Tr. 10, 17).  In a decision dated January 31, 2018, the

ALJ found that Vickers was not disabled.  (Tr. 10-17).  Vickers requested a review

of this decision, and, on July 6, 2018, the ALJ's decision became the final decision

of the Commissioner when the Appeals Council denied his request for review.  (Tr.

1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the court **DENIES** plaintiff's motion for

summary judgment, **GRANTS** defendant's motion for summary judgment, and

**AFFIRMS** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

Vickers was born on May 17, 1964, and was 41 years old on June 30, 2005,

the alleged onset date of disability.  (Tr. 16).  At the hearing, Vickers testified that

he lives in his father's home with his father.  (Tr. 38, 52).  He has a bachelor's

degree in computer science, but he has not worked in that field for quite some time.

He last worked in about 2011 at McDonald's.  (Tr. 40).  Vickers says that internal

inflammatory issues involving his pancreas and ulcerative colitis combined with

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to
this record are identified as "Tr."

the residual effects of a hydrocele on his scrotum have left him with constant pain and discomfort that has left him unable to work. (Tr. 40-41). Vickers takes pain medication and enzymes to help with digestion. He also adheres to a low fat, high fiber, gluten-free diet. (*Id.*).

In considering Vickers' claims, the ALJ applied the five-step disability analysis to Vickers' claims and found at step one that he has not engaged in any substantial gainful activity since June 30, 2005, the alleged onset date. (Tr. 12). At step two, the ALJ found that Vickers has the following severe impairments: pancreas divisum, hydrocele, and ulcerative colitis. (Tr. 12-13). The ALJ also found that Vickers' history of degenerative disc disease of the cervical spine is a non-severe impairment. (Tr. 13). At step three, the ALJ found that Vickers did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (Tr. 13). In making this finding, the ALJ concluded that Vickers did not meet any relevant listing under 5.00 Digestive System (including 5.06 for inflammatory bowel disease), 6.00 (genitourinary disorders), or any other relevant listing. (Tr. 13). The ALJ also determined that Vickers has the residual functional capacity ("RFC") to perform light work except that he is limited to lifting/carrying and pushing/pulling up to 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking up to 6 hours during an 8-hour workday; and perform sitting for up to 30 minutes at a time and standing for up to 2 hours at

will.  (Tr. 13-15).  At step four, the ALJ determined that Vickers has no past

relevant work.  (Tr. 15).  At step five, the ALJ concluded that there were a

significant number of jobs in the national economy that Vickers could perform

(such as cashier, assembler production, and general office clerk), and, thus, he was

not under a disability from the alleged onset date through the date of the decision.

(Tr. 16-17).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  During the

administrative process a state agency makes an initial determination that can be

appealed first to the agency itself, then to an ALJ, and finally to the Appeals

Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If a claimant does not obtain

relief during the administrative review process, the claimant may file an action in

federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

4

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

before their insured status expires; Title XVI benefits are available to poverty-

stricken adults and children who become disabled.  F. Bloch, Federal Disability

Law and Practice § 1.1 (1984).  While the two programs have different eligibility

requirements, both "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. *Id*. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden then transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In short, where substantial evidence supports the ALJ's decision, it must be upheld.

8

C.    Analysis of Plaintiff's Claims

    1.    *Plaintiff Has Not Raised a Substantial Question that he Meets or Equals a Listing*

Vickers argues that the ALJ erred in failing to find that any of his impairments singularly or in combination meet or equal a listing.  He notes that two of his three ailments are not listed under 5.00, 5.06, 6.00, or any other relevant listing.  (ECF No. 13, PageID.689).  He faults the ALJ for failing to procure substantial evidence about the "peculiar specifics" of his combination of ailments since they are not included in the listings.  It is not entirely clear to the court what Vickers intends to argue by saying this.  But, to the extent that he contends that the listings themselves are deficient because they do not include his particular impairments, this argument is not persuasive.  The Administration's regulations require the ALJ to determine if a claimant's impairment(s) "meets or equals one of our listings in appendix 1."  20 C.F.R. § 404.1520(a)(4)(iii).  Thus, it was proper for the ALJ to evaluate Vickers' symptoms in relation to the existing Listings. More accurately, the Administration's regulations *required* her to do so.  So, Vickers is not entitled to reversal or remand on this basis.  And, to the extent that Vickers suggests that it was the ALJ's responsibility to obtain additional evidence about his impairments, he is mistaken.  It is the plaintiff's burden, not the ALJ's, to present evidence that he meets or medically equals a listing.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("The claimant bears the burden of

9

proof during the first four steps.").  It is true that an ALJ must "develop [a claimant's] complete medical history" and to "make every reasonable effort to help [the claimant] get medical reports from [the claimant's] medical sources."  20 C.F.R. § 404.1512(d); *see Sutton v. Comm'r of Soc. Sec.*, 2013 WL 1122877, at *2 (E.D. Mich. Mar. 18, 2013) (Cleland, J.).  But Vickers has not pointed to any specific additional records that the ALJ should have obtained.  Nor has Vickers presented any facts suggesting a heightened duty to develop the record existed, such as when an unrepresented claimant was incapable of presenting an effective case and unfamiliar with hearing procedures.  *See Lashley v. Secy. of Health and Human Svcs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983); *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008).  Moreover, the ALJ expressly inquired of Vickers' attorney about the existence of additional records pertaining to Vickers' treatment in South Carolina, with counsel indicating that he was 98 percent sure that the records had been "exhibited."  (Tr. 34).  Unconvinced that the records had been included, the ALJ requested that counsel double-check the electronic file "to make sure those records [sic] in the electronic file" which counsel agreed to do.  (Tr. 35).  And indeed, the records referenced in the ALJ's colloquy with counsel appear to be included in the record at Tr. 462-496.  Thus, there is no error to correct in this regard.

Vickers also argues that "[t]he mere fact the Social Security's Blue Book listing of ailments fail[s] to contemplate the Plaintiff's particular and peculiar combinations of medical conditions in totality is not a complete bar to disability." (ECF No. 13, PageID.690).  And he states that he has made a "prima facie" case for meeting or equaling the listing.  But, as the Commissioner points out, it was Vickers' burden to prove that his impairments met or equaled a listing.  (ECF No. 14, PageID.706) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (providing that it is the claimant's burden to establish that he meets or medically equals a listing at Step Three); *see also* 20 C.F.R. § 416.912(a) ).  The Commissioner argues that Vickers failed to meet his burden of proof.  (*Id.*)  The court agrees.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *see also Thacker v. Soc. Sec. Admin.*, 93 Fed. Appx. 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  "An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." *Sullivan*, 493 U.S. at 530.  An impairment or combination of impairments is considered medically equivalent to a listed impairment " … if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *See Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam).  When, as here, the ALJ addressed the relevant listings and the plaintiff challenges the manner in which ALJ addressed it, the ALJ's decision will not be disturbed if it is supported by substantial evidence.  *See Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009) (The court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.") (citation omitted).

Under the theory of presumptive disability, a claimant is eligible for benefits if he or she has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec*., 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012).  When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  An ALJ's failure to sufficiently articulate his Step Three findings is error.  *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d

846, 858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").  As previously noted, the burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

As to the ulcerative colitis, Vickers concedes that this is a type of inflammatory bowel disease ("IBD").  (ECF No. 13, PageID.684).  Therefore, Listing 5.06, which covers IBD, is applicable.  20 C.F.R., pt. 404, subpt. P, app. 1, § 5.06.  To satisfy the requirements of Listing 5.06, a claimant must show IBD documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with: (A) obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period; *or* (B) two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period: (1) anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or (2) serum albumin of

3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or (3) clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or (4) perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or (5) involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or (6) need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter. *Id.*

The ALJ found that the record does not demonstrate that Vickers meets the components of Listing 5.06. (Tr. 13). Substantial evidence supports this finding. Indeed, to the extent the record discusses any aspect of Listing 5.06, it shows that Vickers did not meet or equal its requirements. For example, an upper gastrointestinal tract endoscopy conducted on April 30, 2015 indicated that Vickers had no history of anemia. (Tr. 274). An examination conducted on February 15, 2015 revealed abdominal tenderness, but no mass. (Tr. 293). And that same examination indicated that Vickers was "feeling better" after being prescribed pain medication and described his condition as "stable." (Tr. 294-295). The only

14

abscess contained in the record is an abscessed tooth. (*See, e.g.*, Tr. 414). Vickers, at best, reported only intermittent weight loss, with no percentages specified. Indeed, although he reported weight loss on August 5, 2015 (Tr. 336) and September 29, 2018 (Tr. 586), he denied weight loss on May 2, 2008 (Tr. 377), December 15, 2014 (Tr. 316, 507), October 1, 2015 (Tr. 338), and February 22, 2017 (Tr. 580). On two occasions—March 29, 2007 and January 26, 2008— Vickers declined to checkmark whether or not he experienced weight loss. (Tr. 387, 403). Thus, the record demonstrates that Vickers's condition missed several of the discrete components of Listing 5.06.

There is no listing for pancreas divisum or hydrocele so the ALJ looked to listings covering similar categories of conditions, symptoms and/or systems. The ALJ found that Vickers' history pancreas divisum did not meet or medically equal any relevant listing under 5.00 for the digestive system and that Vickers' hydrocele did not meet or medically equal any relevant listing under 6.00 for genitourinary disorders. (Tr. 13). To be sure, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006) ("Even though the ALJ did not discuss (or maybe even consider) every piece of medical evidence relevant to [the claimant's impairment], the

15

evidence that she did consider was substantial."). However, here the ALJ did not

provide a fulsome discussion as to whether either of these impairments are

equivalent to any listings mentioned. Indeed, the whole of her substantive analysis

merely states that Vickers did not meet any listing under 5.00 or 6.00. Notably,

with the exception of the form heading in the decision, she does not mention

equivalence and there is no medical opinion in the record on equivalence, making

it all the more critical that the ALJ give a reasoned explanation sufficient to

facilitate meaningful review. [2] In this respect, i.e. failure to provide a reasoned

explanation, the ALJ erred. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846,

858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v.*

*Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in

---

[2] The Regulations provide that the agency will obtain a medical opinion on equivalence. 20 C.F.R. § 404.1526(c). Formerly, the administrative rulings aligned with this requirement and failure to obtain a medical opinion alone was deemed error, but a more recent SSR provides a narrower reading, providing that the ALJ need not obtain such an opinion if the ALJ does not believe that a claimant can reasonably meet or equal a listing. *See* SSR- 17-2p. An SSR "as an interpretation of [the agency's] own regulation[,] is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Hicks v. Comm'r of Soc. Sec.,* 909 F.3d 786 (6th Cir 2018) (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 549 (6th Cir. 2004)). Thus, some courts have opined that the new ruling obviates the bright line requirement for an ALJ to obtain a medical opinion on equivalence. *Morris v. Comm'r of Soc. Sec.*, 2019 WL 3943976, at *3 (E.D. Mich. Aug. 2, 2019) (quoting *Marvin v. Comm'r of Soc. Sec*., 2018 WL 4214339, at *3 n.3 (W.D. Mich. Aug. 10, 2018), *adopted by* 2018 WL 4208682 (W.D. Mich. Sept. 4, 2018)). "But SSR 17-2p eliminates the requirement of a medical opinion only when the 'evidence does not *reasonably support*' a finding of equivalence." *Morris*, 2019 WL 3943976, at *3 (citing SSR 17-2p, 2017 WL 3928306 at *4) (emphasis in original). It is not necessary for the court to resolve the issue whether the agency's interpretation is inconsistent with the unqualified language of the regulation as Vickers has failed to raise a substantial question as to whether he can meet *any* listing.

a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").  But the error is harmless where a claimant fails to direct the court to evidence in the record that would raise a substantial question as to whether he could meet or equal a listing.

In order to raise a "substantial question," a claimant "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing."  *Id.*; *see also Dew v. Comm'r of Soc. Sec.*, 2017 WL 744238 at *2 (E.D. Mich. Feb. 27, 2017).  Without this specific evidence, an ALJ does not "commit reversible error by failing to evaluate a listing at Step Three."  *Smith-Johnson*, 579 Fed. Appx. at 433; *see also Roberts v. Comm'r of Soc. Sec.*, 2017 WL 5501323 at *10 (N.D. Ohio Oct. 19, 2017); *Andres v. Comm'r of Soc. Sec.*, 2017 WL 3447849 *16 (N.D. Ohio July 11, 2017).  Vickers does not point to any particular evidence in the record to suggest that he reasonably could meet or equal every requirement of any specific listing.  Rather, he merely reiterates his own conclusion that the combination of his conditions prevents him from engaging in gainful employment.  This conclusion, while undoubtedly heartfelt, is insufficient to meet plaintiff's burden to demonstrate reversible error.

2.     *RFC Finding is Supported by Substantial Evidence*

Vickers also argues that the ALJ's decision must be reversed or remanded because the ALJ determined his RFC without seeking or relying on a medical

opinion of a physician, treating or otherwise.  (ECF No. 13, PageID.693) (citing 42

U.S.C. § 421(h)(2)).  Vickers also contests the ALJ's reliance on his Activity of

Daily Living ("ADL") report, arguing that the ALJ should have relied on a medical

opinion.  (*Id.* at PageID.692).  In short, Vickers says that his combination of

ailments makes his RFC "tenuous at best," because the "completely random"

nature of the onset and "severity" of his flare-ups makes it "virtually impossible to

maintain any gainful employment."  (*Id.* at PageID.691).[3]

In response, the Commissioner argues that (1) Vickers did not meet his

burden of proof; (2) the RFC need not be based on a medical opinion, and (3)

substantial evidence supports the ALJ's RFC finding.  (ECF No. 14, PageID.707-

709).  The Commissioner points out that it is the claimant's burden to establish his

RFC.  (ECF No. 14, PageID.707) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d

388, 391 (6th Cir. 1999).  And, according to the Commissioner, both the Sixth

Circuit and this court have repeatedly recognized that an ALJ is not required to

rely on a medical opinion that corresponds to the RFC finding.  (*Id.* at

PageID.711).  In any event, the Commissioner argues that substantial evidence

supports the ALJ's RFC finding.

---

[3] Similarly, Vickers contests "the mere alleged ability to perform light work duties cannot be the determining factor in Mr. Vickers['] particular situation, but his ability to actually perform any gainful work at the reasonably sustainable level necessary to maintain a viable livelihood." (*Id.* at PageID.691).  The court construes this as another iteration of Vickers' RFC argument.

As an initial matter, Vickers did not provide any medical opinion from the relevant period establishing functional limitations arising from his physical impairments.  The Commissioner correctly points out that it is the claimant's burden to establish the existence of a disability.  *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("[W]e reject plaintiff's contention that once the burden of proof shifts to the Commissioner at step five, the Commissioner is then required to prove a claimant's [RFC."); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.")).  Here, although the record contains a diagnosis of pancreas divisum, ulcerative colitis, and hydrocele, Vickers points to no evidence, besides his own statements and assertions (some of which he concedes are not in the record), about the functional impact of his impairments.  (ECF No. 13, PageID.695-696); *see also Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder ... does not automatically entitle plaintiff to the receipt

of benefits.  Rather, in order to qualify for the receipt of benefits ... plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").

Furthermore, in a series of unpublished decisions, the Sixth Circuit has been consistent in its conclusion that the ALJ does not need to rely on a medical opinion in formulating the RFC.  *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (internal quotation marks and citation omitted); *Stokes v. Comm'r of Soc. Sec.*, 769 Fed. Appx. 298 (6th Cir. 2019); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 Fed. Appx. 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

In fashioning Vickers' RFC, the ALJ relied on the medical evidence as well as Vickers' own statements about his daily activities and ability to function.  Thus, Vickers' assertion that the ALJ "failed to point to any empirical or irrefutable

20

medical evidence of record … to support [her RFC finding]" is off base.  (ECF No. 13, PageID.693).  As to the medical evidence, the ALJ correctly observes that it is "rather sparse" for the period ranging from the alleged onset date (June 30, 2005) through essentially 2014.  (Tr. 14).  On December 15, 2014, Vickers visited Hamilton Community Health Network to address complaints about bloody bowel movements and a testicular mass that had been developing for a one-year period.  (Tr. 14, 316).  Vickers underwent a CT scan in February 2015, which revealed evidence of a large amount of fecal matter throughout the colon, but no inflammatory process in the abdomen or pelvis.  (Tr. 15, 301).  A physical examination conducted in March 2015 revealed normal findings, except for an epididymal cyst and a small hydrocele.  (Tr. 320).  Although Vickers' physician recommended that he follow-up with a urologist for drainage, he declined to do so at that time.  (Tr. 320).  On June 22, 2015, Vickers presented for a physical examination, which showed normal results: soft abdomen, no rebound tenderness, normal BS, no organomegalies noted, and no masses.  (Tr. 333).  As the ALJ noted, Vickers underwent an ERCP in May 2017 due to abdominal pain, a procedure that he tolerated "well."  (Tr. 15, 528).  The Commissioner correctly points out that the stent associated with the ERCP was removed without difficulty, and an endoscopy conducted after the removal revealed normal findings as to the esophagus and stomach.  (Tr. 554).  On June 2, 2017, Vickers received the results

of recent endoscopic biopsies, which revealed neither cancer, precancer, nor infection. (Tr. 542). And, as the Commissioner and the ALJ note, records from Dr. Alexander Rodriguez's office from September 2017 reflect that Vickers had no abdominal pain, constipation, or rectal bleeding. (Tr. 571). No records suggest functional limitations greater than those assessed by the ALJ. These records discussed support the ALJ's RFC assessment.

Additionally, although Vickers takes issue with the ALJ's reliance on his self-reported statements in his Activities of Daily Living report, it was not improper for the ALJ to do so. In fact, the Administration's regulations *required* the ALJ to consider Vickers' daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i) ("Factors relevant to your symptoms, such as pain, which we *will* consider include . . . [y]our daily activities.") (emphasis added); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). As the ALJ noted, Vickers indicated in his ADL report that he did his own laundry, cooking, and grocery shopping. (Tr. 14, 198). Indeed, he reported that he did laundry weekly, cooked "when necessary," and shopped for groceries once or twice a week for an hour "at most." (Tr. 198). He also reported being able to ride in a car. (Tr. 14, 198). And, at the hearing, Vickers testified that

he walks "on a regular basis" "usually, maybe two hours at a time."  (Tr. 50).

Thus, Vickers' own statements support the ALJ's RFC finding.

Because both Vickers' medical history and his subjective statements were

properly considered and support the ALJ's RFC, the court will not disturb this

finding.

### 3.   *Subjective Symptoms Evaluation is Sufficient*

Vickers argues that substantial evidence does not support the ALJ's

evaluation of his subjective symptoms.  (ECF No. 13, PageID.696-670).  In

particular, Vickers objects to the ALJ's finding that "the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for

the reasons explained in this decision."  (*Id.* at PageID.695, 697).  According to

Vickers, the ALJ failed to include any substantial evidence to support this

"random" conclusion.  (*Id.* at PageID.695).

In response, the Commissioner argues that the ALJ provided reasons

throughout her decision as to why she declined to give full credit to Vickers'

assertions of disabling pain.  (ECF No. 14, PageID.709) (citing Tr. 13-15).  The

Commissioner asks the court to reject Vickers' invitation to look at one paragraph

of the ALJ's decision in isolation.  (*Id.*) (citing *Arcaute v. Comm'r of Soc. Sec.*,

2016 WL 4394215, at *6 (W.D. Mich. Aug. 28, 2016) ("Where a claimant

contends that the ALJ made only a 'boilerplate' credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account.")).

Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016) governs the ALJ's consideration of Vickers' subjective symptoms. "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c). In assessing a claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus on the consistency of the complaints with the other evidence in the record. *Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility … to clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016); SSR 16-3p, 2016 WL 1119029, at *1. "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment." *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017). As to a claimant's subjective symptoms, the regulations counsel ALJs to consider a number of

factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

Substantial evidence supports the ALJ's evaluation of Vickers' subjective symptoms.  "Where a claimant contends that the ALJ made only a 'boilerplate' credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account."  *Arcaute v. Comm'r of Soc. Sec.*, 2016 WL 4394215, at *6 (W.D. Mich. Aug. 28, 2016).  As detailed above, the ALJ examined the medical evidence as well as Vickers' daily activities and statements.  The ALJ also expressly acknowledged Vickers' testimony on the severity of his symptoms and compared his testimony against the objective evidence.  (Tr. 14-15).  Thus, the court finds no error.

4.    *No Error in Declining to Discuss Medication Side Effects*

Vickers argues that the ALJ erred in failing to discuss the side effects of his medications.  (ECF No. 13, PageID.696).  In this regard, he states "Plaintiff must take strong pain medication … and other medications that cause nausea, fatigue, and drowsiness."  (*Id.*)  He argues that these side effects should have been included in the ALJ's RFC finding or "at least mentioned in the judge's decision."  (*Id.*)  In response, the Commissioner argues that Vickers reported no side effects in his March 2016 Disability Report.  (ECF No. 14, PageID.712) (citing Tr. 235).

An ALJ must consider objective medical evidence and other evidence such as the type, dosage, effectiveness, and side effects of any medication.  20 C.F.R. § 416.929(c)(3)(iv).  But, allegations of a medication's side effects must be supported by objective medical evidence.  *See Farhat v. Sec. of Health & Human Servs.*, 1992 WL 174540, at *3 (6th Cir. July 24, 1991); *see also Bentley v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 434, 435 (6th Cir. 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec. of Health & Human Servs.*, 1993 WL 291301, at *7 (6th Cir. Aug. 2, 1993) (noting that no objective medical evidence supported claimant's allegations that his medication made him so drowsy that he was unable to work); *Essary v. Comm'r*, 114 Fed. Appx. 662, 665 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her

26

medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians.").

Here, Vickers did not present any objective evidence of his side effects.  In his disability report to the Administration, he listed seven medications, but notably left blank the column asking him to list any side effects.  (Tr. 235).  The record indicates that Vickers was counseled about the common side effects of his pain medication.  (*See*, *e.g*., Tr. 550).  But there is no evidence in the record that Vickers actually suffered from these side effects.  Indeed, the only mention of side effects is found in Vickers' brief itself.  (ECF No. 13, PageID.696).  And even then, Vickers merely states that the "Plaintiff must take strong pain medication … and other medications that cause nausea, fatigue, and drowsiness." (*Id.*)  Thus, it is not clear whether Vickers actually experiences (or has experienced) such side effects, or whether these medications have a tendency to cause such side effects. Regardless, Vickers is not entitled to reversal or remand on this basis.

     5.   *The ALJ Applied the Correct Standard at Step Five.*

Vickers takes issue with the national economy standard at step five.  (ECF No. 13, PageID.690).  He argues that "the National availability standard fails to contemplate the particular demographic availability of the type of work outlined in the ALJ's conclusions.  It presumes the Plaintiff has the resources to relocate to

some other region at will if no actual employment exists in any viable proximity within his current state of residence." (*Id.* at PageID.691).

As the Commissioner correctly points out, Vickers does not take issue with the ALJ's findings at step five. (ECF No. 14, PageID.713). Rather, he contests the standards that the ALJ applied. This is not a winning argument. Although the court is not unmindful of plaintiff's assertion that he lacks the necessary resources to relocate, this fact is not part of the calculus at step five. Rather, the Administration's regulations and Sixth Circuit case law require the ALJ to examine jobs available in the *national* economy at Step 5. *See Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g). Thus, it was proper for the ALJ to base her findings on the national economy standard.

## IV.   ORDER

For the reasons set forth above, the court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date: August 26, 2020                              s/Stephanie Dawkins Davis
                                                            Stephanie Dawkins Davis
                                                            United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 26, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Michael Vickers, 1329 Arrowwood Lane, Grand Blanc, MI 48439.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov